## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRIS BARNARD and SINC                )
MCEVENUE, in their capacity as the     )
Shareholder Representatives for the    )
former shareholders of Telmetrics Inc. )
                                       )
              Plaintiffs,              )
                                       )
    v.                                 )        C.A. No. 1:22-cv-01382-RGA
                                       )
MARCHEX, INC.,                         )
                                       )
              Defendant.               )

### REPORT AND RECOMMENDATION

      Pending before the court in this contract dispute litigation is a Motion filed pursuant to

Federal Rule of Civil Procedure 12(b)(6) by Defendant Marchex, Inc. (hereinafter "Marchex") to

compel arbitration and dismiss the operative Second Amended Complaint (hereinafter "SAC")

(D.I. 20) brought by Plaintiffs, Chris Barnard and Sinc McEvenue, in their capacity as the

Shareholder Representatives for the former shareholders of Telmetrics, Inc. (hereinafter "the

Shareholder Representatives" or "Plaintiffs").  (D.I. 23)[1]  For the following reasons, I

recommend Marchex's motion to compel arbitration be **DENIED** and its motion to dismiss be

**GRANTED-IN-PART** as to Counts VI and VII and **DENIED** as to Counts I–V.

---

[1] The briefing on the pending motion is found at D.I. 24, D.I. 27, and D.I. 28.

## I.     BACKGROUND

Plaintiffs are representatives of former shareholders of a Canadian company, Telmetrics,

Inc., which was purchased by Marchex on November 5, 2018.  (*See* D.I. 20 at ¶¶ 1, 5–6)

Telmetrics and Marchex specialize in business-to-business call analytics.  (*Id.* at ¶ 16)

The parties entered into a Share Purchase Agreement (hereinafter "SPA") which is at

issue in this breach of contract dispute.  (*Id.* at ¶ 14)  The dispute centers on whether Telmetrics'

former shareholders are entitled to earnout payments and any of the escrow funds set aside under

the Escrow Agreement (hereinafter "EA").  (*E.g. id.* at ¶¶ 63–69, 104)  The escrow funds were

set aside to serve as security for indemnification claims.  (*See id.* at ¶ 78)  Marchex has asserted

indemnification claims against Plaintiffs and Telmetrics' former CEO, Andrew Osmak, for

allegedly misrepresenting the company's financial projections before the sale.  (*Id.* at ¶ 298)

Osmak, who is not a party to the instant suit, filed his own claims against Marchex alleging

constructive discharge and alleged misconduct that interfered with Telmetrics' ability to achieve

its financial targets.  (*See id.* at ¶ 301; *see also* D.I. 24 at 2)  The parties' respective claims have

been asserted in two lawsuits in Canada as follows:

- *Osmak v. Telmetrics*, No. CV-20-00640994-0000 (Ontario Sup. Ct. of Justice);[2]
- *Telmetrics v. Osmak*, No. CV-21-00674206-0000 (Ontario Sup. Ct. of Justice)[3] (collectively "Canadian Actions").

This litigation was filed on October 21, 2022, and is the third lawsuit between the parties

concerning their respective rights and obligations under the SPA and EA.  (*See* D.I. 1)

The SPA provides Telmetrics' former shareholders an opportunity to receive two

earnouts totaling $3,000,000 (USD), the first for $1,250,000 and second for $1,750,000

---

[2] A copy of the *Osmak v. Telmetrics'* Statement of Claim is attached to the Freund Declaration. (D.I. 25 Ex. 12)
[3] A copy of *Telemetrics v. Osmak's* Statement of Claim is attached to the SAC.  (D.I. 20 Ex. 2)

(hereinafter "Earnout Consideration"), if Telmetrics' sales increased to meet its "Financial Goals"[4] across two twelve-month periods. (*See id.* at ¶¶ 22–23; *see also* SPA § 1.2(b); SPA Ex. B)  Former shareholders could also obtain the Earnout Consideration if there was an "Acceleration Event[.]"[5]  (D.I. 20 at ¶¶ 24–28; *see also* SPA § 1.8(e))  The SPA designated Plaintiffs, Barnard and McEvenue, along with Osmak as Shareholder Representatives to act on behalf of all former shareholders of Telmetrics.  (SPA § 6.3; *see also* D.I. 20 at ¶ 1)  Under the SPA, Marchex was required to provide the Shareholder Representatives with the statements and financial information relevant to the Earnout Consideration.  (D.I. 20 at ¶ 52; *see also* SPA § 1.8(a))

The SPA contains procedures for resolving disputes concerning the Earnout Consideration as follows:

> The Shareholder Representatives shall notify [Marchex] on or before the date fifteen (15) days after the date on which [Marchex] delivers to the Shareholder Representatives such Earnout Statement, failing which such Earnout Statement shall be deemed to be accepted by the Sellers with respect to the corresponding Earnout Period. [Marchex] and the Buyer shall give the Shareholder Representatives and their professional advisors reasonable access to the books and records and working papers of [Telmetrics] and its Subsidiaries and their accountants to enable the Shareholder Representatives to exercise their rights under this Section 1.8. [Marchex] and the Shareholder Representatives shall attempt to resolve any such disagreements in good faith.  If [Marchex] and the Shareholder Representatives are unable to resolve all such disagreements on or before the date fifteen (15) days following notification by the Shareholder Representatives of any

---

[4] "[Marchex] will pay the following in the aggregate: . . . (b) Up to Three Million Dollars ($3,000,000) in cash based upon the achievement of targeted financial goals over the two (2) twelve (12) month periods following the Closing Date." SPA § 1.2(b); *see also* SPA Ex. B.

[5] "'Acceleration Event' means any of the following: . . . (c) Osmak has not resigned without Good Reason or been terminated for Cause and the Parent reduces the Company's workforce to less than 35 employees without consent of the Shareholder Representatives." SPA § 12.1. "'Good Reason' means (i) any reduction in the Salary (as such term is defined in the Executive Employment Agreement); or (ii) Osmak's relocation to a facility or location more than 60 kilometres from Osmak's current work location of Mississauga, Ontario, except for required business travel not to exceed five (5) consecutive business days at any time or a total of any seventeen (17) business days in any rolling three-month period without his consent." *Id.*

such disagreements, [Marchex] shall retain the Final Accounting Firm to resolve all such disagreements, who shall adjudicate only those items still in dispute with respect to the Earnout Statement. . . .

The parties hereto agree that judgment may be entered upon the determination of the Final Accounting Firm in any court having jurisdiction over the party against which such determination is to be enforced.

(SPA § 1.8(c)–(d))

The Shareholder Representatives allege that starting from December, 2018, Marchex operated Telmetrics in bad faith and in a commercially unreasonable manner to avoid paying the Earnout Consideration. (D.I. 20 at ¶¶ 48, 170)  It did so by limiting Osmak's communication with clients and migrating them to Marchex. (*E.g. id.* at ¶¶ 174–75)  According to the SAC, during this time, Telmetrics allegedly employed less than thirty-five (35) employees, triggering an Acceleration Event. (*Id.* at ¶¶ 141–45)  The Shareholder Representatives allege that Marchex improperly refused to answer information requests about Osmak's departure or provide adequate supporting documentation showing that Telmetrics failed to meet the Financial Goals. (*Id.* at ¶¶ 50–54)

The SPA also contained provisions for Marchex to obtain indemnification in the event of breaches of representations and warranties, and tax liabilities incurred by Telmetrics prior to closing.  An Escrow Deposit of $1,010,000.00 (USD) held by the Escrow Agent, US Bank, (EA §§ 2.1–2.2; SPA § 1.5; *see also id.* at ¶ 38),  served as security for the indemnification obligations set forth in an EA that was incorporated into the SPA. (*E.g.* SPA § 10.1(a); EA § 1.1.)  If an "Indemnifiable Matter"[6] was asserted, Marchex was required to give the

---

[6] Indemnifiable Matters consisted of "[reimbursement of Marchex] for, any Losses directly or indirectly rising out of, based upon or resulting from those matters set forth under Sections 11.1(a) and 11.1(b) of the SPA." (EA § 1.1)  The definitions section of the SPA defines "Indemnifiable Matters" as having the meaning set forth in SPA § 10.3, which defines them as "[a]ll representations and warranties set forth in this Agreement and any Schedules or certificates

4

Shareholder Representatives a "good faith estimate of the reasonably foreseeable maximum amount of its claim for the indemnification and the basis for such a claim, and shall make available to the Shareholder Representatives all relevant information regarding such Indemnifiable Matter." (EA § 3.2) The Shareholder Representatives had the ability to dispute any Indemnifiable Claim "within thirty (30) days after the Escrow Agent's receipt of the notice." (*Id.* at §§ 3.3, 3.4) If "the Shareholder Representatives have not given the Escrow Agent notice" that they dispute the claim, "[Marchex] shall be entitled to make demand upon the Escrow Agent . . . that it then disburse [the dispute amount] to [Marchex]." (*Id.* at § 3.3)

Marchex claims that the Shareholder Representatives did not timely notify the Escrow Agent of their objection to Marchex's indemnification claim for release of the funds until after the thirty (30) day deadline had passed. (D.I. 24 at 6–7) The Shareholder Representatives allege in the SAC that Marchex allegedly made "incomprehensible and intentionally vague" claims to $760,000.00 of the Escrow Deposit. (D.I. 20 at ¶ 247) On February 3, 2020, Marchex allegedly hand-delivered a letter to the Escrow Agent demanding release of $760,000.00 from the Escrow Deposit. (*Id.* at ¶ 90) Marchex allegedly sent the required notice of its indemnification demand to the Shareholder Representatives via mail. (*Id.*) Plaintiffs allege in the SAC that they did not receive Marchex's demand for release of the funds until February 13, 2020, after the funds had already been released by the Escrow Agent. (*Id.* at ¶ 92)

The instant litigation generally centers on the parties' disputes concerning entitlements to payments under the Earnout Consideration and the Escrow Deposit. In the SAC, the Shareholder Representatives assert seven Counts. The first five are causes of action for breach of contract.

---

delivered pursuant hereto or thereto, and all covenants, agreements and undertakings of the parties contained in or made pursuant to this Agreement and any certificates delivered pursuant hereto or thereto, and the rights of the parties to seek indemnification with respect thereto[.]"

Count I alleges that Marchex breached the SPA by failing to pay the Earnout Consideration following an Acceleration Event.  Count II alleges Marchex violated SPA § 1.8(a) by failing to operate Telmetrics in a reasonable and good faith manner purposefully to avoid paying the Earnout Consideration.  Count III alleges Marchex did not give the Shareholder Representatives adequate access to books, records, and working papers in violation of SPA § 1.8(c).  Count IV alleges Marchex failed to follow the proper Earnout Statement procedures as outlined in SPA § 1.8(b) and (c).  Count V alleges breach of SPA § 10.2(a) and § 3.2 of the EA arising from Marchex's alleged unfounded and untimely indemnification claim for which it received $760,000 from the Escrow Deposit.  Count VI alleges Marchex breached the SPA's forum selection clause in 2021 when it filed the *Telemetrics v. Osmak* lawsuit in Canada.  Finally, Count VII alleges abuse of process by filing the Canadian Actions for an improper purpose to gain a strategic advantage in this case and to delay the pending litigation.  In addition, Marchex argues the doctrine of comity requires this court to dismiss the pending case in favor of the Canadian lawsuits.

Marchex filed the instant motion on June 7, 2023.  (D.I. 23)  The motion was fully briefed as of July 26, 2023,  (D.I. 28),  and was referred to the undersigned Magistrate Judge by District Judge Richard G. Andrews for resolution on October 4, 2023.  (D.I. 31)  Marchex moves to compel arbitration of the breach of contract claims in Counts I through V, on the basis they are subject to mandatory arbitration under the SPA.  Even if the claims are not subject to arbitration, Marchex moves to dismiss all Counts asserted in the SAC for failure to state a claim and out of comity to the Canadian Action.

## II.    MARCHEX'S MOTION TO COMPEL ARBITRATION

Marchex moves to compel arbitration based on the dispute resolution language of SPA

§§ 1.8(c) and (d).  (D.I. 24 at 9–11)  The SPA provides in pertinent part that "[Marchex] shall

retain the Final Accounting Firm to resolve all such disagreements, who shall adjudicate only

those items still in dispute with respect to the Earnout Statement" after the parties' good faith

attempt at resolution.  (SPA § 1.8(c))  The SPA goes on to state "[t]he determination of the Final

Accounting Firm with respect to the correctness of each matter in dispute shall be final and

binding on the parties."  (*Id.* at § 1.8(d))  The Shareholder Representatives claim that the SPA's

dispute resolution provisions do not carry a presumption of arbitrability and that the conduct in

question falls outside of the scope of disputes addressed in the SPA.  (D.I. 27 at 6–8)

On July 20, 2023, after the opening and answering briefs were filed, the Third Circuit

issued a decision interpreting language in an Asset Purchase Agreement that is squarely on point

with the SPA at issue in this case.  In *Sapp. v. Industrial Action Services, LLC*, 75 F.4th 205 (3d

Cir. 2023),[7] plaintiff sued to recover an earnout that was allegedly withheld in bad faith under the

Asset Purchase Agreement.  *Id.* at 209–10.  The agreement required that any disputes with the

earnout provision were to be submitted to an accounting firm for a final, binding decision.  *Id.* at

209.  The Third Circuit analyzed the distinction between arbitration and expert determination and

held that the provision at issue was not an agreement to arbitrate but was instead an agreement

for an expert determination of narrow, accounting-related disputes.  *Id.* at 213–15.

The Third Circuit based its ruling on four factors, which the court applies to the SPA in

the instant case.  First, the court looked at the scope of the accounting firm's adjudicative

---

[7] The Shareholder Representatives brought this case to the court's attention on October 27, 2023, through a Notice of Supplemental Authority.  (D.I. 32)  Additionally, the Shareholder Representatives cite *Archkey Intermediate Holdings v. Mona*, 302 A.3d 975 (Del. Ch. 2023), in their supplementation.  The *Archkey* court held that an Accountant True-Up Mechanism was a mechanism for submission of disputes to expert determination, not arbitration, using reasoning similar to that in *Sapp*.  *See id.* at 1006.

authority. *Id.* at 213. The contractual provision in *Sapp* narrowed the dispute procedure to only accounting-related factual matters. *Id.* Similarly, the SPA narrows the dispute procedure to "only those items still in dispute with respect to the Earnout Statement." (SPA § 1.8(c))

Second, the court found the 30-day deadline for the accounting firm's decision was insufficient to perform the broad-based type of investigation undertaken by an arbitrator. *Sapp*, 75 F.4th at 213. Likewise, the SPA at issue also requires the Final Accounting Firm to resolve disputed matters within a 30-day deadline. (SPA § 1.8(d))

Third, the court considered the accounting firm's decision-making process. *Sapp*, 75 F.4th at 213–14. There were no procedural rules, "like those of the American Arbitration Association[,]" governing the accounting firm's determination outlined in the contract. *Id.* at 214. Likewise, the resolution procedures in the SPA do not reference any format procedural rules. Pursuant to the SPA, the Final Accounting Firm is only to consider the parties' written submissions and its determination "shall not be by independent review." (SPA at § 1.8(d)) The SPA, like the Agreement in *Sapp*, "contains no reference to a standard set of rules, like those of the American Arbitration Association" or any procedures beyond those mentioned for how the Final Accounting Firm should make its decision. *Sapp*, 75 F.4th at 214.

Lastly, the *Sapp* court looked for other bargained for dispute resolution mechanisms. *Id.* at 214–15. It found that in another provision of the agreement, the parties had agreed to non-binding mediation that did not preclude resolution through litigation if mediation was unsuccessful. *Id.* Here, there are no other despite resolution mechanisms identified in the SPA. The EA adopts and incorporates by reference the dispute resolution mechanisms stated in the Earnout Section of the SPA. (EA § 3.6)

Based on the application of the factors discussed in *Sapp*, the court recommends that the

SPA dispute resolution provision at issue constitutes an agreement for submission of disputes under the Earnout to expert determination, not arbitration. *Sapp*, 75 F.4th at 215. Accordingly, the court recommends **DENYING** Marchex's motion to compel arbitration.

## III.   MARCHEX'S MOTION TO DISMISS

### A. Legal Standard

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal

9

evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider the complaint and documents referenced in or attached to the complaint. *See In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).").

Marchex argues that Rule 9(b)'s heightened pleading standard applies to the allegations in Counts I, II, and V. (D.I. 24 at 8–9) "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Marchex argues for the heightened pleading standard because the Shareholder Representatives have requested punitive damages based on "fraudulent" conduct, and Counts I, II, and V explicitly "sound in fraud." (D.I. 24 at 8–9) The Shareholder Representatives respond that these claims are for breach of contract and are governed by Rule 8(a). (D.I. 27 at 9–10)

The court finds that Rule 8(a) governs because the "crux" of the allegations arise from Marchex's breach of specific provisions of the SPA as detailed in Counts I through V. *Shareholder Representative Servs., LLC v. Medidata Sols., Inc.*, 2020 WL 972618, at *1 (D. Del. Feb. 24, 2020). Allegations that Marchex's breach of the SPA was committed in bad faith does

not trigger a heightened pleading standard in this instance and Marchex has cited no authority requiring the court to apply a Rule 9(b) standard to core breach of contract claims.

## B. Discussion

Marchex moves to dismiss the Shareholder Representatives' five breach of contract claims ("Counts I–V"), breach of a forum selection clause ("Count VI"), and abuse of process claim ("Count VII") for failure to state a claim.

To plead a breach of contract claim for Counts I–V, the Shareholder Representatives must allege "(1) the existence of a contract, express or implied; (2) breach of an obligation imposed by the contract; and (3) damages." *E.g. Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 213 (D. Del. 2022).

### i.   Count I: Breach of Contract (Acceleration Event)

Marchex argues that the Shareholder Representatives have not sufficiently pled an Acceleration Event as defined in SPA § 12.1 entitling them to payment of the Earnout Consideration because they "do not allege facts showing Osmak was terminated without cause or had 'Good Reason' to resign." (D.I. 24 at 11–12)  Nor have they pled facts to show that Marchex was the "but for" cause of any employee's termination such that the workforce was reduced to less than thirty-five (35) employees, triggering an Acceleration Event.  (*Id.* at 12)  The Shareholder Representatives respond that their allegations that an Acceleration Event occurred are based off of extrapolations from publicly available employment data and LinkedIn® records and are sufficient to plausibly state a claim.  (D.I. 27 at 10–11)

Count I alleges than an Acceleration Event was triggered because Marchex reduced Telmetrics' workforce to under thirty-five (35) employees without the Shareholder Representatives' consent and that the reduction in force took place without Osmak having been

terminated for cause or having resigned without Good Reason. (D.I. 20 at ¶¶ 130–56) The SAC alleges that publicly available data from the Canada Emergency Wage Subsidy program, information known about employees' salaries, and LinkedIn® records indicate that Telmetrics employed less than thirty-five (35) people during the Earnout Periods. (*Id.* at ¶¶ 142–45) The Complaint also alleges that Osmak was not terminated for cause or resigned without Good Reason. (*See id.* at ¶ 186)

Pleadings on information and belief are permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016). On a motion to dismiss, the court must view the allegations in the Complaint in the light most favorable to the nonmoving party. In doing so, the Shareholder Representatives allegations are plausible, and discovery should proceed concerning Osmak's separation from Telmetrics and the size of Telmetrics' workforce. Furthermore, Marchex's challenges to the Shareholder Representatives' allegations based on information from public sources create questions of fact inappropriate for resolution on a motion to dismiss.

Therefore, the court recommends **DENYING** Marchex's motion to dismiss Count I.

### ii. Count II: Breach of Contract (Operation of Telmetrics' Business)

Marchex argues that the allegations that it failed to operate Telmetrics in good faith and a commercially reasonable manner are not sufficiently pled because they do not allege that it took actions to avoid paying the Earnout Consideration. (D.I. 24 at 12–13) Viewing the SAC in the light most favorable to the Shareholder Representatives, it is expressly alleged that Marchex purposefully undermined the business to avoid payment of the Earnout Consideration. (*E.g.* D.I.

20 at ¶ 189)[8]  The complaint alleges that Marchex began to exhibit bad faith conduct in December, 2018.  (*Id.* at ¶ 170)  It allegedly did so by stripping Osmak of his authority to hire new employees and interact with Telmetrics' biggest clients.  (*E.g. id.* at ¶¶ 171–72, 184)  It threatened Osmak with litigation if he were to communicate with them.  (*Id.* at ¶ 175)  Marchex allegedly refused to hire any new employees or fill Osmak's role while he took leave in June, 2019.  (*E.g. id.* at ¶¶ 173, 177)  And upon returning two weeks later, Osmak was barred from communicating with certain Marchex executives entirely.  (*Id.* at ¶ 180)

Marchex argues that it was not required to fund Telmetrics with additional "resources" and "staffing."  (D.I. 24 at 13 (quoting *id.* at ¶¶ 165, 184))  But this argument raises a factual dispute concerning the interpretation of Marchex's obligations under the SPA.  Marchex was required to run Telmetrics "in good faith and in a commercially reasonable manner."  (SPA § 1.8(a))  The factfinder — not the court — should determine whether its actions were proper. Furthermore, Marchex notes that the Shareholder Representatives have not pled how much business was lost due to Marchex's alleged actions, nor have they detailed how formulas allocating business in the SPA were breached.  (D.I. 24 at 13)  Marchex's arguments are more appropriate for a motion for summary judgment on a developed record.  At the motion to dismiss stage, the allegations are only required to be facially plausible such that discovery into them is

---

[8] "Upon information and belief, if Defendant is required to produce the books, records and working papers of the Company, as they were obligated to do, the factual information within Defendant's knowledge or control will reveal further facts and evidence of Defendant's misconduct and failure to operate the Company carried on the Company's business in the ordinary course [sic], act in good faith with respect to the operation of the Company's business, act in a commercially reasonable manner with respect to the operation of the Company's business, and actions taken in the operation of the Company's business in bad faith *with the principal purpose of avoiding the payment of Earnout Consideration and having a material direct negative effect on the Company's revenue for purposes of achieving the Financial Goals.*" (D.I. 20 at ¶ 189 (emphasis added))

13

warranted.

Marchex's case authorities are distinguishable. *Tendyne Holdings. v. Abbott Vascular*, 2019 WL 2717857, at *3 (D. Del. June 28, 2019), concerned conclusory allegations that an earnout was withheld in bad faith. (*See also* D.I. 27 at 13)  Here, the SAC contains detailed factual allegations about Marchex's alleged "starve out." (D.I. 20 at ¶ 182)  For example, the Shareholder Representatives contend that Osmak was barred from communicating with two of Telmetrics' biggest clients, Hibu and Thryv, and Telmetrics did not replace Osmak when he took medical leave, even though he served as Telmetrics' *de facto* head of sales. (*Id.* at ¶¶ 174–79)  Whether Marchex properly operated Telmetrics is a fact intensive inquiry.  Furthermore, *Reklam v. Bellator Sport Worldwide, LLC*, 2017 WL 5172397, at *6 (D. Del. Nov. 8, 2017), and *Sharma v. Trizetto Corp.*, 2016 WL 4764821, at *4 (D. Del. Sept. 12, 2016), concerned breach of the implied covenant of good faith and fair dealing, which is not at issue here.  Even so, plaintiffs in both cases only alleged conclusory allegations of defendant's bad faith.  But here, the Shareholder Representatives give numerous examples of conduct that was allegedly undertaken in bad faith for the express purpose of avoiding payment of the Earnout Consideration. (*E.g.* D.I. 20 at ¶ 198)  And the plaintiff in *Reklam* did not take advantage of his or her ability to inspect defendant's books and records, 2017 WL 5172397, at *6, whereas the Shareholder Representatives have allegedly asked numerous times for Marchex's records. (*See, e.g.* D.I. 20 at ¶¶ 71(e), 72; *see also* D.I. 27 at 13)

Therefore, the court recommends **DENYING** Marchex's motion to dismiss Count II.

### iii. Count III: Breach of Contract (Reasonable Access to Books, Records, and Working Papers)

Marchex argues that Count III should be dismissed because the Shareholder Representatives have not identified any unreleased records related to Marchex's obligations

under SPA § 1.8(b) and because it was not required to turn over the documents requested.  (D.I. 24 at 13–14)

SPA § 1.8(c) provides that "[Marchex] shall give the Shareholder Representatives and their professional advisors reasonable access to the books and records and working papers of [Telmetrics] and its Subsidiaries and their accountants to enable the Shareholder Representatives to exercise their rights under this Section 1.8." The Shareholder Representatives allege that they requested records on multiple occasions and were met with silence and inaction.  (*E.g.* D.I. 20 at ¶¶ 51–54, 71(e), 72)  Thus, the Shareholder Representatives could not exercise their rights to challenge the Earnout Statements under SPA § 1.8, potentially to significant financial detriment. (*See id.* at ¶ 73)

Marchex argues that "[the Shareholder Representatives] have not identified any existing records reasonably related to and supporting the [E]arnout [S]tatements that Marchex refused to provide." (D.I. 24 at 13–14 (internal quotations omitted))  Marchex does not explain how the Shareholder Representatives would know which documents they are missing when they complain that they have not received any documents at all.  (D.I. 20 at ¶ 72)

Next, Marchex argues that the Shareholder Representatives requested documents are unrelated to their duties under § 1.8.  (D.I. 24 at 14)  Additionally, Marchex makes a factual argument that it did not act in bad faith for failing to turn over information to the Shareholder Representatives "upon first request." (*Id.* (citing *Sharma v. Trizetto*, 2016 WL 4764821, at *3 (D. Del. Sept. 12, 2016))  The Shareholder Representatives argue that the factfinder should decide if the scope and timing of their requests fall outside the SPA's terms. (D.I. 27 at 13–14)

Because Marchex's argument raises disputes of fact, the court recommends **DENYING** Marchex's motion to dismiss Count III.

### iv. Count IV: Breach of Contract (SPA Earnout Statement Procedures)

Marchex argues that Count IV is pled to avoid submitting the parties' claims to arbitration pursuant to the SPA. (D.I. 24 at 14)  For the reasons explained in Section II, *supra*, the court recommends that the language in the SPA for referral of disputes to a Final Accounting Firm is not an arbitration agreement but instead is an expert determination provision. *Sapp. v. Indus. Action Servs.*, 75 F.4th 205 (3d Cir. 2023).  Marchex does not advance other arguments in favor of dismissal, other than Count IV "duplicates Plaintiffs' other breach of contract claims and should be dismissed for the same reasons." (D.I. 24 at 14)  Beyond this statement, Marchex does not explain how the claim is duplicative.  Thus, the court recommends **DENYING** Marchex's motion to dismiss Count IV.

### v. Count V: Breach of Contract (Breach of EA)

Marchex moves to dismiss Count V, in which the Shareholder Representatives allege Marchex breached the EA by failing to provide timely notice of its indemnification claim, thus preventing the Shareholder Representatives from disputing it in time to prevent the Escrow Agent's release of $760,000 from the Escrow Deposit to Marchex. (D.I. 24 at 15–17)  Marchex argues that the Shareholder Representatives undisputedly failed to file a timely objection with the Escrow Agent, which is why it released the disputed $760,000 to Marchex. (*Id.* at 15–16)  The Shareholder Representatives claim that Marchex did not comply with the EA and that the claim notice was defective. (D.I. 27 at 15)

The SAC alleges that Marchex allegedly sent an indemnification claim "listing a number of incomprehensible and intentionally vague claim descriptions, without any identified losses and without indicating exactly *when* any of the claims purportedly occurred." (D.I. 20 at ¶ 247 (emphasis in original))  The Shareholder Representatives notified Marchex and the Escrow

Agent that they were challenging the claim. (*Id.* at ¶¶ 257–58)  But while the dispute was still

ongoing, Marchex allegedly demanded that the Escrow Agent release the $760,000 to it via a

hand-delivered letter while sending the Shareholder Representatives notice of the demand

through the mail, causing a delay that resulted in the disputed portion of the Escrow Deposit

being released unchallenged. (*Id.* at ¶¶ 259–61)

The SAC contains sufficient allegations to plausibly infer that the Shareholder

Representatives challenged Marchex's indemnification claim and that Marchex interfered with

their timing and ability to assert their challenge to the disputed portion of the Escrow Deposit.

Therefore the court recommends **DENYING** Marchex's motion to dismiss Count V.

### vi.  Count VI: Breach of Forum Selection Clause

SPA § 11.10 states that "any legal or equitable action or proceeding arising under or in

connection with this Agreement shall be brought exclusively in the federal or state courts sitting

in Wilmington, Delaware[.]"  The Shareholder Representatives argue that Marchex brought the

Canadian Action in violation of this provision. (D.I. 20 at ¶¶ 289–90)

Marchex moves to dismiss Count VI because the Shareholder Representatives ask for

damages, rather than specific performance. (D.I. 24 at 17)  The Shareholder Representatives

argue that they have incurred expenses — particularly attorneys' fees — defending the Canadian

Action, which was filed in violation of the SPA's forum selection clause, and want

compensation. (D.I. 20 at ¶ 292; D.I. 27 at 17)

This court's decision in *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320 (D.

Del. 2017) (Andrews, J.), requires dismissal of this Count.  The court noted that "[u]nder

Delaware law, the remedy for breach of a valid forum selection clause is specific performance"

because "any remedy other than specific performance would deprive [p]laintiffs of the benefit of

17

their bargain." *Weston*, 228 F. Supp. 3d at 332 (quoting *Carlyle Inv. Mgmt. LLC v. Nat'l Indus. Grp.*, 2012 WL 4847089, at *12 (Del. Ch. Oct.11, 2012)) (internal quotations omitted).  Here, the Shareholder Representatives have not requested specific performance but instead request damages.  (D.I. 27 at 17 n.5)  They note that the breach of forum selection clause claim in *Weston* was dismissed because the parties did not fully brief the forum selection clause issue. (*Id.* at 17); 228 F. Supp. 3d at 332.  But the court in *Weston* also noted that it was "doubt[ful]" that plaintiffs could state the claim if it were briefed.  228 F. Supp. 3d at 332.  Although the Shareholder Representatives highlight language in *Weston* stating that "[t]he court is aware of no case where plaintiffs were allowed to recoup damages *in addition* to their remedy of specific performance, *id.* (emphasis added), they do not cite a case where plaintiffs were able to recover damages at all.  They cite *Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414 (D. Del. Sept. 20, 2006), for the proposition that recovery is theoretically possible, but this is contradicted by more recent authority in *Weston*.

Therefore, the court recommends **GRANTING** Marchex's motion to dismiss Count VI with prejudice because amendment would be futile based on *Weston's* holding.

### vii. Count VII: Abuse of Process

Lastly, Marchex argues that the Shareholder Representatives' claim for abuse of process should be dismissed.  "[T]he essential elements of the tort are: 1) an ulterior purpose; and 2) a wil[l]ful act in the use of the process not proper in the regular conduct of the proceedings." *E.g. Adams v. Klein*, 2019 WL 4143106, at *2 (D. Del. Aug. 19, 2019) (alternations in original) (quoting *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Sup. Ct. 1983)).  To prove the second element, "a form of extortion is required," such as "a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Allscripts Healthcare, LLC v.*

*Andor Health, LLC*, 2021 WL 7209358, at \*1 (D. Del. Dec. 13, 2021) (internal quotations omitted) (quoting *Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at \*2 (Del. Sup. Ct. July 1, 2016)). "Abuse of process contemplates some overt act done in addition to the initiating of the suit such that the mere filing or maintenance of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action." *Korotki*, 2016 WL 3637382, at \*3 (internal quotations and emphasis omitted); *see also Nuance Comm'ns, Inc. v, MModal, LLC*, 2018 WL 6804488, at \*6 (D. Del. Dec. 27, 2018) (noting same).

Marchex argues that filing suit lawfully cannot give rise to an abuse of process claim as a matter of law. (D.I. 24 at 18–19) The Shareholder Representatives allege that the Canadian Action, which Marchex has stalled, was filed for an improper purpose to prevent the filing of the pending action and to illicitly coerce the Escrow Agent into withholding its remaining $250,000. (D.I. 27 at 18)

The Shareholder Representatives do not plead an abuse of process claim because the complaint only describes conclusory allegations that the Canadian Action was filed with an improper motive. (*E.g.* D.I. 20 at ¶¶ 301–03) Even if it were, the law is settled that filing suit without more cannot give rise to an abuse of process claim. *Korotki*, 2016 WL 3637382, at \*3. And unlike *MModal*, the Shareholder Representatives have not pled any other overt action.

Therefore, the court recommends **GRANTING** Marchex's motion to dismiss. Dismissal should be without prejudice.

### viii. International Comity

Finally, Marchex argues that this court should dismiss or stay any remaining claims in the interest of international comity. (D.I. 24 at 19–20) "International comity has been defined as the recognition which one nation allows within its own territory to the legislative, executive, or

19

judicial acts of another nation." *PATS Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 673 (D. Del. 2016) (internal quotations omitted); *see also Cliffs-Neddrill Turk Int'l-Oranjestad v. M/T Rich Duke*, 734 F. Supp. 142, 150–51 (D. Del. 1990).  Although federal district courts have the inherent power to stay or dismiss a claim on comity grounds, this only occurs once a foreign judgment has been made. *PATS*, 197 F. Supp. 3d at 674 (citing *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006)).

Marchex argues that the claims in this action conflict with the Canadian Actions.[9]  (D.I. 24 at 19–20)  The Shareholder Representatives argue that Marchex has not provided an explanation as to how the suits would be duplicative or inconsistent with one another. (D.I. 27 at 19–20)

Marchex provides only attorney argument as to how this court should exercise its discretion and dismiss the case in the interest of comity.  There is no factual support as to the following:  (1) what issues, if any, in the Canadian Actions overlap with the pending suit; (2) the nature and stage of the Canadian Actions; (3) how close the Canadian Actions are to resolution; and (4) what issues, if any, would remain for this court to determine following the resolution of the Canadian Actions.

This court has held that "parallel proceedings on the same in personam claim should normally be allowed to proceed simultaneously, at least until a judgment is reached." *PATS*, 197 F. Supp. 3d at 674.  Therefore, the court recommends **DENYING** Marchex's motion that the interest of comity supports dismissal of the SAC.

---

[9] The Osmak Litigation has no bearing on Marchex's international comity argument because he is not a party to this case.

IV.     **CONCLUSION**

In summation, the court makes the following recommendations:

- Marchex's Motion to Compel Arbitration should be **DENIED**;

- Marchex's Motion to Dismiss Counts I–V should be **DENIED**;

- Marchex's Motion to Dismiss Count VI should be **GRANTED** with prejudice;

- Marchex's Motion to Dismiss Count VII should be **GRANTED** without prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed, R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated:  February 2, 2024

Sherry R. Fallon
United States Magistrate Judge